UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAVID T. FRAZIER, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) Nos. 1:14-CV-134-CLC |
| | ) 1:09-CR-188-CLC-SKL-1 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Respondent*. | ) |

## MEMORANDUM OPINION

Before the Court is Petitioner's amended *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 80, 84]. Petitioner filed his original petition on April 24, 2014 [Doc. 80], the Government responded in opposition on July 24, 2014 [Doc. 86], and Petitioner replied on August 7, 2014 [Doc. 88]. During pendency of the petition, Petitioner filed four motions for leave to amend [Docs. 84, 87, 102, 111], two supplements to his original reply [Docs. 90, 95], one motion for appointment of counsel [Doc. 99], four motions to expedite ruling on his § 2255 motion [Docs. 89, 92, 98, 102], and a request for a copy of his docket sheet free of cost [Doc. 91]. On September 20, 2015, the Court granted Petitioner's first motion to amend [Doc. 84] and directed the Government to respond to the arguments raised in Defendant's remaining filings [Doc. 104]. Pursuant to that order, the Government filed an amended response on December 14, 2015 [Doc. 109], to which Petitioner replied on January 11, 2016 [Doc. 114].

For the reasons stated below, Petitioner's July 31, 2014 request to amend [Doc. 87] will be **GRANTED** and latter two requests to amend [Docs. 102, 111] will be **DENIED** as untimely. The requests to supplement Petitioner's reply [Doc. 90, 95] will be **GRANTED** and his petition

as amended [Docs. 80, 84, 87] will be **DISMISSED WITH PREJUDICE.** The remaining non-dispositive motions [Docs. 89, 91, 92, 98, 99, 102] will be **DENIED as moot**.

I.   BACKGROUND

In 2010, Petitioner pleaded guilty to conspiring to manufacture, distribute, and possess with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) [Doc. 46 ¶¶ 1, 4]. Under 21 U.S.C. § 841(b)(1)(A)(viii), Petitioner faced a sentence of between ten years' and life imprisonment. The Court ultimately deemed Petitioner to be a career offender under §4B1.1 of the United States Sentencing Guidelines ("USSG" or the "Guidelines"), based on his two prior Tennessee convictions for felony evading arrest. As a result, Petitioner was subject to an enhanced guidelines range of 262 to 327 months' incarceration [*See* PSR ¶¶ 27, 36, 38, 66]. The Court sentenced Petitioner to a within-Guidelines term of 294 months' imprisonment [Doc. 60]. On appeal, the Sixth Circuit affirmed Petitioner's conviction and sentence on February 19, 2013, rejecting an untimely request for rehearing *en banc* [Doc. 76]. Petitioner did not seek a writ of certiorari from the Supreme Court.

On July 21, 2014, the Polk County Criminal Court—the venue responsible for the two evading-arrest convictions used to classify Petitioner a career offender—permitted Petitioner to withdraw his guilty plea to the evading arrest offenses after the Tennessee Court of Criminal Appeals held that the associated sentence violated Tenn. Code Ann. § 40-20-111(b), because it consisted of two *concurrent* one-year terms rather than two *consecutive* one-year terms [*See* Doc. 87 at 5; *id.* at 10, 12]. Upon being permitted to withdraw his original plea, Petitioner immediately entered a new plea and received a revised, lawful sentence [*id.* at 5–7].

On April 24, 2015, Petitioner filed the current § 2255 petition seeking to vacate his federal conviction and sentence [Doc. 80]. Since that time, he has also filed four motions for leave to amend [Docs. 84, 87, 102, 111].

## II. TIMELINESS OF PETITIONER'S CLAIMS

Relevantly here, 28 U.S.C. § 2255(f)(1) provides that the one-year statute of limitations applicable to collateral challenges runs from "the date on which the judgment of conviction becomes final." This same limitations period governs the timeliness of later-filed amendments. *Cameron v. United States*, No. 1:05-CV-264, 2012 U.S. Dist. LEXIS 48381, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)). The fact that the Sixth Circuit refused Petitioner's request for rehearing as untimely, combined with Petitioner's failure to seek a writ of certiorari with the Supreme Court, compel the conclusion that his conviction became "final" for purposes of subsection (f)(1) on May 30, 2013—90 days after affirmation of his conviction and sentence on direct appeal. *See Clay v. United States*, 537 U.S. 522, 525 (2003) (explaining that a conviction affirmed on appeal becomes final when the 90-day period for seeking a writ of certiorari expires); U.S. Sup. Ct. R. 13(3) (explaining that the time to file a writ for certiorari runs from the date of denial of hearing en banc only "if [the] petition for rehearing is timely[,] . . . the [Court] appropriately entertains an untimely petition for rehearing[,] . . . or [the Court] sua sponte considers rehearing). As such, Petitioner's window for making a timely request for collateral relief expired on May 20, 2014.

### A. Timeliness of Pending Motions for Leave to Amend

While Petitioner's original § 2255 petition was filed before the statute of limitations expired on May 20, 2014 [Doc. 80], the motions for leave to amend—filed June 6, 2014 [Doc. 84], July 31, 2014 [Doc. 87], August 31, 2015 [Doc. 102], and December 29, 2015 [Doc. 111]—

were untimely. Thus, the Court may only consider them if the limitations period was tolled, if the claims contained therein relate back to timely filed claims under Federal Rule of Civil Procedure 15(b), or if one of the alternative limitations periods found in §§ 2255(f)(2), (3), or (4) applies.[1]

### 1. Timeliness of July 31, 2014 Amendment

Section 2255(f)'s statute of limitations is not jurisdictional and thus may be tolled under limited, extraordinary circumstances. D*unlap v. United States*, 250 F.3d 101, 1007 (6th Cir. 2001). A petitioner bears the burden of establishing that equitable tolling applies to his case, *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), and must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Hail v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011); *see also Jurado*, 337 F.3d at 643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day."). Petitioner's first pending motion to amend [Docs. 87] fails to identify an extraordinary circumstance justifying non-compliance with § 2255(f)(1). *Compare Stovall v. United States*, No. 1:12-cv-377, 2013 U.S. Dist. LEXIS 12937, at *9 (E.D.T.N. Jan. 31, 2013) (rejecting request for equitable tolling where the petitioner failed to set forth any facts which suggested he had diligently pursued his rights), *with Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (granting request for equitable tolling where the petitioner pled facts indicating he had been separated from his legal materials for extended period of time due to

---

[1] Although all four motions were untimely, this Court granted Petitioner's first motion to amend [Doc. 84] on September 20, 2015, in reliance on the Government's assertion that the proposed amendment was timely [*see* Doc. 104; *see also* Doc. 86 at 2]. As such, the Court limits its analysis to the three motions still pending [Docs. 87, 102, 107].

multiple detention transfers and an illness). As such, the Court finds the motion is not subject to equitable tolling.

Even though there are no grounds for equitable tolling, if the proposed claims "relate back" to a timely, original pleading and are thus saved from being time-barred, the Court will still consider them. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). An amended claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained an amended petition will not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those [set forth in] the original pleading." *Felix*, 545 U.S. at 650. In other words, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 658 (citations omitted).

The claim asserted in Petitioner's July 31, 2014 amendment—challenging a career-offender enhancement based on later vacated state-court convictions—closely relates to one of the grounds raised in Petitioner's original § 2255 motion [*Compare* Doc. 80 pp. 7, 20 (suggesting the now-vacated state-court convictions can no longer be used to categorize him as a career offender) *with* Doc. 87 pp. 1–3 (arguing his constitutional rights are violated by imposition of a career-offender enhancement based upon subsequently vacated state-court convictions)]. This demonstrates that the proposed amendment shares a core of operative fact with, and thereby relates back to, Petitioner's original, timely filed petition. As such, the motion for leave to amend [Doc. 87] will be **GRANTED**.

5

## 2. Timeliness of August 31, 2015 and December 29, 2015 Amendments

In contrast to the July 31, 2014 motion, Petitioner's August 31, 2015 and December 29, 2015 proposed amendments set forth a novel basis for collateral relief—arguing that the Supreme Court's invalidation of the Armed Career Criminal Act's (the "ACCA") residual clause in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), should be extended to nullify the identical residual clause found in Section 4B1.2(a) of the Guidelines [Docs. 102 pp. 1–2; 111 pp. 1–2].[2]

For these amendments, Petitioner appears to rely on § 2255(f)(3), which provides an alternative starting point for the limitations period: "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the

---

[2]  The ACCA mandates a 15-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG §4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* USSG §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

*Johnson*'s effect on §4B1.2(a)'s residual clause is doubtful. *See United States v. Smith*, 73 F.3d 1414, 1417–18 (6th Cir. 1996) ("[T]he Sentencing Guidelines are not subject to a vagueness challenge."); *see also United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015) ("No circuit has held in a published opinion that advisory guidelines can be unconstitutionally vague."). Regardless, the Court need not resolve the issue because, as explained below, the Supreme Court has not made *Johnson*'s holding retroactively applicable in the context of a challenge to the residual clause of §4B1.2(a).

Supreme Court and made retroactive applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). As such, the timeliness of these latter two proposed amendments depends on (1) whether the Supreme Court decision on which Petitioner relies amounted to recognition of a new right, and (2) whether that right has been "made retroactively applicable to cases on collateral review." The Court finds that it need not address the first prong—whether *Johnson*'s holding extends to Section 4B1.2 of the Guidelines, thereby giving rise to a new right—because Petitioner has failed to establish that the proposed rule has been "made" retroactively applicable.

The United States Supreme Court explained in *Tyler v. Cain* that under 28 U.S.C. § 2244(b)(2)(A)—the state-prisoner corollary of § 2255(h)(2)—"'made' means 'held'" and, thus, a new rule or right is only "made" retroactive when the Supreme Court itself holds "that the new rule is retroactively applicable to cases on collateral review." 533 U.S. 656, 662 (2001). In her concurring opinion in *Tyler*, Justice O'Conner recognized that there were two ways in which the Court can make a rule retroactive: (1) by expressly stating that the new rule has such effect; or (2) "through multiple holdings that logically dictate the [same conclusion]." *Tyler*, 533 U.S. at 668 (O'Conner, J., concurring).[3] In an attempt to illustrate the second scenario, she explains a holding in "Case One that a particular type of rule applies retroactively" combined with a second holding in "Case Two that a given rule is of that particular type" necessarily means that the rule so referenced applies retroactively because the Court has "'made' the given rule retroactive" through existing case law "'dictat[ing]' th[at] conclusion." *See id.* at 668–69 (noting the Court only makes "a rule retroactive . . . where [its] holdings logically permit no other conclusion than that the rule is retroactive.").

---

[3] While Justice Thomas delivered the opinion of the Court, Justice O'Conner's concurrence represents the narrowest ground of agreement by a majority of the Justices, and thus, "the holding of the Court." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court summarized the various ways in which new rules affect cases, explaining that newly announced rules only apply to retroactively in limited situations. *Id.* at 351–52.

New *substantive* rules generally apply retroactively. *Id.* There are two types of new substantive rules: (1) decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620–21 (1998) (finding narrower interpretation of 18 U.S.C. § 924(c)(1)'s "use" prong amounted to new substantive rule retroactively applicable on collateral review because holding that a criminal statute does not reach certain conduct necessarily places previously-convicted defendants at risk of being punished for "an act that the law does not make criminal"), and (2) constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *Teague v. Lane*, 489 U.S. 288, 311 (1989); *see also Schriro*, 542 U.S. at 352–53 (articulating the above categories of new substantive rule); *Jones*, 689 F.3d at 624 (same). Examples of the latter category include rules that place a class of private conduct beyond the power of the state to proscribe, *see, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding Fourteenth Amendment forbids states from making illegal private, homosexual sodomy between consenting adults); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (holding the First Amendment forbids states from punishing an individual for burning the American flag in protest), and rules that prohibit a certain category of punishment for a class of defendants because of their status or offense, *see, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding the Eighth Amendment forbids states from "tak[ing] the life of a mentally retarded offender"). All three forms of substantive rule—the first category recognized in *Bousley* and both subcategories of the class recognized in *Teague*—"apply retroactively because they 'necessarily carry a significant risk that

8

a defendant stands convicted of 'an act that the law does not make a crime' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 353 (quoting *Bousley*, 523 U.S. at 620).

In contrast, new *procedural* rules generally do *not* apply retroactively. *Id.* Procedural rules are defined as those rules that "regulate only the manner of determining the defendant's culpability." *Id.* at 351. Unlike substantive rules, procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted." *Id.* "Because of this more speculative connection to innocence, [the Supreme Court has given] retroactive effect to only a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle*, 494 U.S. at 495). "The only example of such a watershed rule ever cited by [the Supreme Court] is the right to counsel, as set forth in *Gideon*." *Fulcher v. Motley*, 444 F.3d 791, 815 (6th Cir. 2006).

The Sixth Circuit has confirmed that the Supreme Court's holding in *Johnson* sets forth a new substantive rule to the extent that it narrows the scope of the ACCA because it "prohibits the imposition of [§ 924(e)'s 15-year statutory minimum] on those defendants whose status as armed career criminals is dependent on offenses that fall within the residual clause." *In Re Watkins*, 810 F.3d 375, 383 (6th Cir. 2015). In other words, "*Johnson* 'narrowed the class of people who are eligible for' an increased sentence under the Armed Career Criminal Act." *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015) (quoting *Bryant v. Warden FCC Coleman-Medium*, 738 F.3d 1253, 1278 (11th Cir. 2013)). The same cannot be said about *Johnson*'s impact on the class of people who are eligible for an increased sentence under the Guidelines.

Unlike the ACCA—a statute that shifts the defendant's penalty range and minimum and maximum terms of imprisonment—the Guidelines merely guide the execution of a court's

discretion in selecting the appropriate sentence from within an otherwise stagnate range of lawful penalties. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (noting that the Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Any change in a defendant's Guideline range based on *Johnson* would thus work a change in the procedure by which his or her sentence is selected, but it would not change the permissible range of punishments. As such, the proposed rule cannot be said to narrow the scope of a penal statute or place particular conduct or persons beyond the state's power to punish. *Cf. Humphress v. United States*, 543 F.3d 855, 862 (6th Cir. 2005) (finding that the rule announced in *Booker v. United States*, 543 U.S. 220 (2005)—that Guidelines are merely advisory and not mandatory—is a non-watershed, procedural rule); *Goode v. United States*, 305 F.3d 378, 385 (6th Cir. 2002) (finding that the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—that any fact, other than a prior conviction, which increases a statutory penalty range must be found by a jury beyond a reasonable doubt—is a non-watershed, procedural rule).

Moreover, the new procedural rule that would result from extending *Johnson*'s holding to the Guidelines would not be "watershed" because erroneously calculating a defendant's advisory Guidelines range does not render the resulting sentence unfair or unreliable in the way that complete deprivation of the right to counsel does for a trial. *Cf. United States v. Cronic*, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable"). Nor does the proposed rule alter the bedrock procedural elements essential to the fairness of a sentencing proceeding. *See Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013) (explaining rules derived from the application of pre-existing legal principles in a new context do not "effect a sea change in criminal procedure").

In sum, while *Johnson* effected a substantive change in the law by altering the range of lawful sentences under the ACCA, extension of that same reasoning to the Guidelines would result in only procedural changes to the sentencing process. Because the Supreme Court has not made non-watershed procedural rules retroactively applicable on collateral review, Petitioner cannot rely on the renewed one-year limitations period under § 2255(f)(3). *See, e.g.*, *In re Rivero*, 797 F.3d at 989 (assuming *Johnson* applies to the residual clause of Section 4B1.2(a)(2) and concluding that "no combination of holdings of the Supreme Court 'necessarily dictate'" that the resulting rule should be applied retroactively on collateral review); *In re Gieswein*, 802 F.3d 1143, 1147–48 (10th Cir. 2015) (same).

Petitioner has failed to demonstrate that these latter two amendments equitably toll § 2255(f)(1), relate back to a timely pleading, or trigger one of the alternative statutory periods found in §§ 2255(f)(2), (3), and (4). Accordingly, his August 31, 2015 and December 29, 2015 motions to amend [Docs. 102, 111] will be **DENIED** as untimely.

### III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner may obtain relief only on the basis of (1) an error of constitutional magnitude; (2) a sentence in excess of statutory limits; (3) a judgment in absence of jurisdiction, (4) or some other "error of fact or law . . . so fundamental as to render the entire proceeding invalid." *See Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001); 28 U.S.C. § 2255. If the petitioner alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings," *Watson v. United States*, 165 F.3d 486, 488

(6th Cir. 1999). When the petitioner alleges non-constitutional error, he must establish a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotations omitted). This is a "significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady,* 456 U.S. 152, 166 (1982)).

## IV. ANALYSIS

Petitioner articulates four timely collateral claims [Docs. 80, 84, 87]: one challenging the validity of the career-offender enhancement [Docs. 80, 87] and three involving allegations of ineffective assistance of counsel [Docs. 80, 84]. All four fail as a matter of law.

### A. Categorization as a Career Offender Based On Later-Vacated Convictions

Petitioner's first claim asks that the Court set aside his federal sentence based on the fact that the 2003 and 2004 felony-evading-arrest convictions, on which the Court relied to classify him as a career offender, have since been vacated and reimposed by the Polk County Criminal Court [Doc. 80 pp. 7, 20; Doc. 87 pp. 1–2]. Petitioner does not claim that this constitutes either a jurisdictional or a constitutional error, and the 294-month sentence the Court ultimately imposed falls well within the statutory limit of life imprisonment. Therefore, Petitioner is forced to fall back on the argument that being sentenced pursuant to an advisory Guidelines range enhanced on the basis of state convictions that have since been vacated and reimposed is a fundamental error that results in a complete miscarriage of justice. *See Watson*, 165 F.3d at 488.

As a general matter, the Sixth Circuit has held that errors in calculating a defendant's sentencing guidelines typically fall short of § 2255's demanding standard. *See Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996); *United States v. Lankford*, 229 F.3d 1154 (6th Cir. 2000) ("Technical violations of the federal sentencing guidelines will not warrant relief."). And

while two other circuits have held that misclassifying a defendant as a career offender under the Guidelines is cognizable under § 2255, both of those decisions involved sentences imposed under the pre-*Booker*[4] mandatory guideline regime, when the Guidelines had the effective force of laws. *See United States v. Doe*, 810 F.3d 132, 159–60 (3d Cir. 2015); *Narvaez v. United States*, 674 F.3d 621, 630 (2011). The rationale for this conclusion is that even though a miscalculation in the guideline range might have contributed to a higher initial sentence, that same sentence, being within the range of punishment authorized by Congress, could be reimposed in its entirety on resentencing. *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (finding no miscarriage of justice where same sentence could be reimposed were the petitioner granted the § 2255 relief he requested).

There is also precedent, however, for the proposition that vacatur of a state sentence previously used to enhance a federal sentence under the Guidelines is sufficiently exceptional as to constitute grounds for relief under § 2255. *See, e.g.*, *Watt v. United States*, 162 F. App'x 486 (6th Cir. 2006) ("[W]e conclude that it would be a miscarriage of justice to enhance Watt's federal sentence on the basis of state convictions which have been vacated because they were void."); *Cuevas v. United States*, 778 F.3d 267, 270–76 (1st Cir. 2015); *Talley v. United States*, No. 1:12-cv-371-CLC (E.D. Tenn. Oct. 26, 2015) ("The Court finds it would be a miscarriage of justice to enhance Petitioner's sentence on the basis of state convictions which were later vacated because they were void.").

While Petition relies heavily on this latter line of precedent, it does not resolve the issue presented here, because none of the cited cases address a situation where the petitioner's

---

[4] *United States v. Booker,* 543 U.S. 220, 234 (2005)

underlying sentences were vacated on the basis of a procedural technicality and then promptly reimposed.

The Fourth Circuit, when confronted with a similar situation, sought clarity in the principles underlying habeas relief:

> [I]n the 28 U.S.C. § 2254 habeas context, the Supreme Court has held that while interests in finality dictate that a court may not ordinarily reach the merits of a successive or abusive habeas claim, there is an exception: if failure to entertain the claim would result in a "fundamental miscarriage[ ] of justice." *Schlup v. Delo,* 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (internal quotation marks omitted). The Court noted that the exception is based on the idea that "habeas corpus is, at its core, an equitable remedy," but it explained that the exception only applies to a "narrow class of cases" and should "remain rare" and only applied in the "extraordinary case." *Id.* at 319, 315, 321, 115 S.Ct. 851 (internal quotation marks omitted); *see also Sawyer v. Whitley,* 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) ("[W]e have emphasized the *narrow scope* of the fundamental miscarriage of justice exception." (emphasis supplied)). As a result, the miscarriage of justice exception in this context has historically been "tied . . . to the petitioner's innocence." *Schlup,* 513 U.S. at 321, 115 S.Ct. 851; *see also United States v. MacDonald,* 641 F.3d 596, 610–11 (4th Cir.2011) ("[T]he exception for a fundamental miscarriage of justice requires a showing that 'a constitutional violation probably has caused the conviction of one innocent of the crime.'") (quoting *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)) . . . .

*United States v. Foote*, 784 F.3d 931, 940 (4th Cir.) *cert. denied,* 135 S. Ct. 2850, 192 L. Ed. 2d 885 (2015). The *Foote* court concluded that "'miscarriages of justice' in the post-conviction context are grounded in the notion of actual innocence," and because, *inter alia*, the petitioner "ha[d] not been proven 'actually innocent' of any of his prior convictions," he was not entitled to relief under § 2255. *Id.* at 941.

The Court finds the reasoning in *Foote* to be persuasive and adopts it here. Pretermitting the issue of whether an erroneous sentence enhancement based on later-vacated convictions pursuant to advisory sentencing guidelines is a fundamental defect justifying § 2255 relief, the Court concludes that here, where there is no dispute that Petitioner both committed and currently

has lawful convictions for the underlying offenses, relying on those convictions to enhance his sentence does not result in a miscarriage of justice.

### B. Grounds Involving Ineffective Assistance of Counsel

Allegations of ineffective assistance of counsel raise the specter of constitutional error. As such, to obtain relief under § 2255, a petitioner raising such a claim must establish by a preponderance that the error "had a substantial and injurious effect." *See Watson*, 165 F.3d at 488. This standard is articulated in the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in

15

trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates three theories of ineffective assistance of counsel. Specifically, Petitioner claims that his attorney provided constitutionally deficient representation by (1) not challenging the Government's jurisdiction to prosecute [Doc. 80 pp. 5, 17–19], (2) not objecting to the application of the mandatory penalty range found in 21 U.S.C. § 841(b)(1)(A) [*Id.* at 4, 14–22], and (3) not challenging the validity of his prior felony convictions [Doc. 84 p. 1].

### 1. Jurisdictional Authority for Prosecution

Petitioner's argument that counsel should have challenged the federal prosecutor's "exclusive jurisdictional authority" based on the fact that his criminal activity occurred within the state of Tennessee and initially resulted in state-law charges [Doc. 80 pp. 5, 17–19] fails to account for the American system of duel sovereignty. Under this system, "each sovereign—whether the Federal Government or a State—is responsible for 'the administration of [its own] criminal justice syste[m].'" *Setser v. United States*, 566 U. S. ___, ___, 132 S. Ct. 1463, 1471 (2012) (quoting *Oregon v. Ice*, 555 U.S. 160, 170 (2009)) (alterations in original). Under this system, the federal government may legitimately prosecute a defendant in federal court for conduct that is also punishable under state law. *Heath v. Alabama*, 474 U.S. 82, 88 (1985). Petitioner violated the laws of the United States—specifically, 21 U.S.C. §§ 846 and 841(a)—as well as the laws of the State of Tennessee, and thus was properly subject to the jurisdiction of both. 18 U.S.C. § 3231 ("[D]istrict courts of the United States shall have original jurisdiction . . . of all offenses against the law of the United States."). Counsel's failure to object on this basis is not a deviation from professional standards. *See Greer v. Mitchell*, 264 F.3d 663,

16

676 (6th Cir. 2001) ("[C]ounsel cannot be ineffective for a failure to raise an issue that lacks merit.").

### 2. Application § 841(b)(1)(A)'s Mandatory Penalty Range

Petitioner next suggests that counsel should have argued against application of § 841(b)(1)(A)'s penalty range based on the total absence of any evidence proving Petitioner "distributed" more than 50 grams of methamphetamine on a single occasion [Doc. 80 pp. 14–16]. His argument misinterprets the penal statute. The penalties associated with § 841(b)(1)(A)(viii) apply for any offense "involving . . . 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). Nothing in that provision requires the distribution of 50 or more grams on a single occasion.

Petitioner was charged with conspiring to manufacture, distribute, and possess with intent to distribute at least 50 grams of methamphetamine from April 2009 through December 2009 [Doc. 1]. In pleading guilty to that offense, Petitioner admitted that the conspiracy involved over 50 grams of methamphetamine during the time that he was a participant [Doc. 46 ¶ 5]. He went on to admit that, during the course of the conspiracy, he personally "made [43] purchases of pseudoephedrine . . . acquiring a total of 103.2 grams" which "would have manufactured in excess of [50] grams of pure or actual methamphetamine" [*Id.*]. Based on the foregoing admissions, Petitioner has failed to establish that the Court erred by applying the § 841(b)(1)(A) penalty range, *see, e.g.*, *United States v. Dado*, 759 F.3d 500, 560 (6th Cir. 2014) ("Under our precedent, § 841(b) . . . allows for strict liability as to the type and quantity of the drugs involved in a § 841(a) offense."), and, as a result, has failed to demonstrate that he was prejudiced by counsel's failure to mount an objection to his sentence on that basis.

### 3. Challenging the Validity of Petitioner's Prior State Convictions

Petitioner's final theory of ineffective assistance focuses on counsel's failure to challenge the validity of the prior Tennessee felony-evading-arrest convictions used to designate Petitioner as a career offender [Doc. 84 p. 1]. The claim fails for lack of prejudice.

It is well established that a defendant is prohibited from collaterally challenging the validity of prior state convictions at his federal sentencing unless he was completely deprived of his right to counsel during the prior proceeding. *Custis v. United States*, 511 U.S. 485, 490 (1994); *United States v. Aguilar-Diaz*, 626 F.3d 265, 269 (6th Cir. 2010). Petitioner does not allege—let alone establish—that such a deprivation occurred here. This omission is fatal because it prevents Petitioner from demonstrating that he incurred prejudice as a result of counsel's failure to raise the futile objection.

## V.  REMAINING NON-DISPOSITIVE MOTIONS

In addition to the petition and proposed amendments discussed above, Petitioner has filed numerous non-dispositive motions. These requests include two motions to supplement his reply to the government's original response [Docs. 90, 95], one motion for appointment of counsel [Doc. 99], four motions to expedite ruling on his § 2255 motion [Docs. 89, 92, 98, 102], and one request for a copy of his docket sheet free of cost [Doc. 91]. Both motions supplementing his reply [Docs. 90, 95] will be **GRANTED**. The remaining motions [Docs. 89, 91, 92, 98, 99, 102], however, will be **DENIED as moot** in light of the Court's resolution of Petitioner's underlying amended petition [Docs. 80, 84, 87].

## VI.  CONCLUSION

For the reasons discussed above, Petitioner's July 31, 2014 request to amend [Docs. 87] will be **GRANTED**, while his latter two proposed amendments [Docs. 102, 111] will be

**DENIED** as untimely. Further, Petitioner's two requests to supplement his reply [Doc. 90, 95] will be **GRANTED** and petition as amended [Docs. 80, 84, 87] will be **DISMISSED WITH PREJUDICE**. The remaining non-dispositive motions [Docs. 89, 91, 92, 98, 99, 102] will be **DENIED as moot**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P 22(b).

    **An appropriate Order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**